IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DANIEL PEARSALL, | CV-03-1295-CO |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff, Daniel Pearsall (Pearsall), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and Supplemental Security Income benefits (SSI), under Titles II and XVI of the Social Security Act (the Act). 42 U.S.C. §§ 405(g), 1383(c)(3). The court has jurisdiction under 42 U.S.C. § 405(g).

The Commissioner's decision should be affirmed and the case should be dismissed.

## BACKGROUND

Pearsall was 36 years old at the time of the ALJ's March 2003, decision denying his application for benefits. Tr. 16. He has a high school education and some college. Id. He has worked in the past as a warehouse worker and customer service associate. Tr. 57. He last worked in June 2001. Tr. 135.

Pearsall first applied for, and was denied benefits in March 1990. Tr. 15. In his second application he alleges that he became disabled on June 4, 2001, due to depression, emotional trauma status-post head injury, and pain in his back, neck, and head. Tr. 16.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than

one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive.

Here, at step one, the ALJ found that Pearsall had not engaged in substantial gainful activity during the period at issue. Tr. 16, 24. 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found Pearsall had the following severe impairments: a learning disorder/ borderline intellectual functioning; depression; an unresolved bereavement process; possible somatoform disorder; and Kyphosus of the back. Tr. 21, 24; 20 C.F.R. §§ 404.1520(c), 416.920(c)).

At step three, the ALJ found Pearsall's impairments did not meet or equal the requirements of a listed impairment. Tr. 21, 24. 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria for these listed impairments are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

The ALJ assessed Pearsall with the residual functional capacity (RFC) to lift 40 pounds occasionally, and 20 pounds frequently; to perform limited repetitive bending, twisting, and stooping; to follow simple instructions; only periodic or cursory contact with the public; and no tandem work with co-workers. Tr. 24-25; 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945(a).

3 - FINDINGS AND RECOMMENDATION

At step four, the ALJ found Pearsall was no longer capable of performing his past relevant work. Tr. 22-23; 20 C.F.R. § 404.1520(e), 416.920(e).

At step five, the ALJ adopted the testimony of a vocational expert to find that Pearsall could perform other work, existing in significant numbers in the national economy, such as sorter of agricultural produce, seedling sorter, and automatic photo developer. Tr. 25. Thus, the ALJ found Pearsall was not disabled within the meaning of the Act. Id.; 20 C.F.R. §§ 404.1520(f), 416.920(f).

## DISCUSSION

I. **The ALJ provided clear and convincing reasons for discrediting Pearson's testimony.**

Pearsall contends the ALJ erred by failing to point to clear and convincing reasons for rejecting his claimed trouble turning his neck, which he says is supported by objective medical evidence in the record. Pearsall also claims the ALJ failed to credit his alleged inability to work under supervision, and instead found him capable of working jobs that require contact with supervisors.

When assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ's general assertion that a claimant is not credible is insufficient.

4 - FINDINGS AND RECOMMENDATION

The ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Here, the ALJ found Pearsall to be credible "to the extent the record supports his allegations," but found no support for an allegedly disabling neck injury, or a limitation from working with supervisors. Tr. 22.

### A.   Neck

The ALJ reviewed the evidence purportedly supporting a disabling neck injury, but found it only indicated a limitation from heavy lifting and repetitive side to side motions of the neck. Tr. 215-16. In July 1999, Pearsall suffered a head and neck injury when a table was accidentally dropped on his head during his work as a warehouseman in the Los Angeles area. Tr. 17. Pearsall suffered a cervical strain. Id. In August, 1999, Pearsall's doctors estimated that he would be temporarily disabled for approximately 12 weeks due to his orthopedic problems. Tr. 208. Then, in October 1999, following an MRI that revealed well-maintained disc spaces, and no signs of arthritic changes, Pearsall's doctors released him to work, noting that he did not require "further work-up or any kind of surgical treatment," but that he should avoid very heavy lifting, and repetitive side to side motions of the neck. Tr. 215-16.

The ALJ also reviewed a May 2002, evaluation of Pearsall by David Stewart, M.D. Tr. 19, 313-15. Pearsall complained of low back pain dating back to the early 1990's when he worked as a freight loader for Greyhound. Pearsall also told Dr. Stewart that he suffered chronic right facial pain, headaches, upper thoracic and low back pain after being assaulted in 1998, and having a table dropped on his head in 1999. However, he admitted that despite these injuries he continued to work

until June 2001.[1] Dr. Stewart noted that Pearsall has "significantly abnormal" posture that undoubtedly caused some discomfort, and that he was "markedly" deconditioned. However, Dr. Stewart determined that Pearsall's mental impairments were probably more disabling than his physical problems. Tr. 315. He recommended that Stewart get some exercise, but avoid carrying more than 40 pounds at one time, and no more than 20 pounds frequently, and avoid repetitive activities such as bending, twisting, and stopping. The ALJ incorporated these precise limitations into Pearsall's RFC assessment. Tr. 22.

### B. Supervision

In support of his contention that he cannot interact with supervisors Pearsall points to his own testimony at the hearing that he has had conflicts in the past with supervisors "trying to act like I was stupid." Tr. 65. Pearsall also points out that he has notoriously inappropriate reactions to family members, neighbors, and the public. Tr. 77-78. However, adopting the medical expert's (ME) testimony, the ALJ disagreed with Pearsall's conclusion that his reactions under the circumstances presented were unreasonable. Tr. 20.

As the ME pointed out, anger is an appropriate response to a neighbor throwing a frisbee against your window at 11 o'clock at night, or when a reckless driver nearly runs into you. Tr. 85-86. Though Pearsall described his reactions to these instances as extreme, he has no criminal record, and has only been hospitalized once, for a brief time in 2000, when he threatened to hurt himself, not others. Tr. 86. Pearsall's arguments have escalated to physical violence with his brothers, but evidently not with members of the public or coworkers. The ALJ noted that, even after Pearsall

---

[1] Notably, at the hearing Pearsall told the ALJ that he stopped working in June 2001, because of mental problems, not related to his neck.

6 - FINDINGS AND RECOMMENDATION

moved into his own apartment to get space from his brothers he continued to visit his mother's house everyday. Tr. 20.

Further, the ALJ found that Pearsall was able to engage in a range of activities of daily living, including taking short walks, going to the library, visiting family, cooking and light cleaning, and shopping. Tr. 20. While disability claimants will not be penalized for attempting to "maintain some sense of normalcy" in their lives, where their level of activity is inconsistent with the degree of limitation alleged, daily activity level will have a bearing on a claimant's credibility. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ found Pearsall's ability to perform a range of activities of daily living and stay out of trouble with the law, together with evidence that he met and married a woman, and was able to work in the past despite stress with coworkers, tended to discredit the degree of social impairment Pearsall alleged. Tr. 20.

In Pearsall's RFC assessment, the ALJ incorporated a limitation from working with the public, or in tandem with coworkers. Tr. 22. However, the ALJ did not agree that, on the basis of Pearsall's testimony, the evidence warranted a complete restriction from interacting with supervisors. I find this conclusion was reasonable, and supported by substantial evidence. See Andrews, 53 F.3d at 1039.

II. **Pearsall's mother's testimony does not establish disability.**

Pearsall's mother, Brenda Pearsall, testified at the hearing that her son does not get along well with his family, is "extremely excitable," and interprets every comment made by family members "the wrong way." Tr. 81. She said she doesn't think her son can work because he has so much difficulty getting along with others. Tr. 82. Mrs. Pearsall said she observed Pearsall giving customers "a bad time" when he worked at a Greyhound bus station in the past. Tr. 83.

Pearsall correctly contends that, while the ALJ noted Mrs. Pearsall's testimony in his written decision, he neither expressly credited, nor discredited it. Tr. 20. Case law clearly establishes that the ALJ must account for lay witness testimony and provide germane reasons for rejecting it. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, the ALJ is not required to discuss non-probative evidence. See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In this case, I find the ALJ did not reject Mrs. Pearsall's testimony, but found it to be non-probative of disability. Thus, he did not err by failing to provide germane reasons for rejecting it.

Notably, Mrs. Pearsall's testimony at the hearing contradicted her statements on a third party information worksheet she filled out on January 14, 2002. Tr. 179-90. On this worksheet Mrs. Pearsall reported that her son gets along "great" with family members, and got along fine with his former employers and co-workers. Tr. 179, 189. These would certainly be germane reasons for rejecting her testimony were this issue revisited on remand.

### III.     The ALJ properly evaluated conflicting medical evidence.

Pearsall contends the ALJ erred in rejecting the mental functional limitations assessed by Dr. William Trueblood, Ph.D., who opined that Pearsall had "marked" impairments in "social functioning," and "concentration, persistence, or pace." Tr. 225. He also claims error in rejecting the concurring opinion of Dr. Mark Williams, M.D. Tr. 352.

The ALJ is responsible for resolving conflicts and ambiguities in medical evidence. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 1999). The ALJ is not bound by a physician's opinion of a claimant's disability or employability, because these are issues reserved to the Commissioner. See 20 C.F.R. § 404.1527(e); SSR 96-5p. The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe

8 - FINDINGS AND RECOMMENDATION

and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The opinion of a treating physician deserves more weight than that of an examining physician, and a non-examining physician's opinion is given the least relative weight. Id.; see also Smolen, 80 F.3d at 1285.

The ALJ must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999). If a treating physician's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 600-601.

### A. Dr. Trueblood

Dr. Trueblood performed a psychological evaluation of Pearsall on December 10, 2001. Tr. 218-26. As the ALJ noted, Pearsall told Dr. Trueblood that his life wasn't going anywhere, that he was socially isolated, and that numerous stressful events had occurred in the last six years of his life, causing him to be depressed. Tr. 17, 218-19. Specifically, Pearsall reported that his father had been killed in an automobile accident in 1995, and that two friends of his died in 1996, as well as a great uncle and a great aunt. Tr. 218. Then in 1997, Pearsall reportedly drove 25 miles per hour into a concrete wall in a suicide attempt. Tr. 219. In 1998, Pearsall was mugged and beaten, causing severe injuries to his nose, which required reconstructive surgery. Id. In 1999, while he was working in a warehouse, Pearsall's co-worker accidentally dropped a table on his head while Pearsall was working underneath, causing him to sustain a head and neck injury. Tr. 219. Pearsall also related to Dr. Trueblood that he was engaged to be married on two separate occasions in 2000. Id.

Pearsall said his first fiancee was unfaithful, and the second was a gang member who abused him emotionally. Id. These relationships culminated in Pearsall calling a suicide crisis hotline, and spending two days in a psychiatric hospital. Tr. 219. At the time of the hearing, Pearsall was married and living with his wife in an apartment in Redmond.

Dr. Trueblood assessed Pearsall with "moderate" restrictions in activities of daily living, noting that his judgement with money was poor as he has lived with his mother most of his life. Tr. 225. Dr. Trueblood rated Pearsall's social functioning impairment as "marked," and noted, "[e]ven though client reports having 20 good friends, I suspect he is probably fairly socially isolated. Social skills are impaired. Client presents as mildly odd. He reports some interpersonal problems on jobs, and problems with temper control." Id. Dr. Trueblood also found "marked" impairment in "concentration, persistence, or pace" and wrote, "I am rating this as marked because of overall significant degree of cognitive impairment. Also, individuals with nonverbal learning disabilities are usually slow in performing tasks." Id.

Rejecting Dr. Trueblood's assessment the ALJ stated,

> he found that [Pearsall] had good persistence on difficult tasks and was not distractible during testing, and yet he gave the claimant a "marked" restriction in concentration, persistence, or pace. [Pearsall] reported that he has several good friends, yet Dr. Trueblood again assigned a "marked" limitation in social functioning because he *suspected* that [Pearsall] was fairly isolated. At this evaluation, [Pearsall] was cooperative, pleasant, he put forth good effort, he was on time for his appointment, hygiene and grooming were good, and there was no disturbance in orientation. A "marked" rating is serious and should be made based upon the reality of the claimant's condition.

Tr. 18 (emphasis in original). In sum, the ALJ rejected Dr. Trueblood's assessment because his clinical findings contradicted the relatively extreme limitations he assessed.

Pearsall argues that, even though he may not have been distractible during testing, a "marked" restriction in concentration, persistence and pace was reasonable because Pearsall scored in the borderline to low average range on those tests, and he told Dr. Trueblood that he forgets what he wants to say and has uncontrollable flashbacks. Tr. 219. Pearsall also contends that Dr. Trueblood's "suspicion" that Pearsall is socially isolated was substantiated by his admission that he has no patience with other people and has heated verbal confrontations with his wife, his family members, coworkers, supervisors, neighbors and the general public. Tr. 65, 85, 324.

Since Dr. Trueblood's opinion was contradicted by other doctors, including the medical expert at the hearing, Dr. Susan Dragovich, Ph.D., the ALJ had a duty to provide specific and legitimate reasons for rejecting it. Although I also find evidence to support the opposite conclusion, I must affirm the ALJ's rejection of Dr. Trueblood's functional assessment because it is supported by specific and legitimate reasons. See Edlund, 253 F.3d at 1156.

**B.     Dr. Williams**

Pearsall also alleges that the ALJ improperly rejected the opinion of Dr. Mark Williams, M.D., who checkmarked the box "I concur," indicating that he agreed with Dr. Trueblood's conclusion that Pearsall had several "marked" functional limitations. Tr. 352.

While the ALJ's reasons for rejecting Dr. Williams' opinion are not overt, reasonable inferences can be drawn from the ALJ's discussion of Dr. Williams. Tr. 20; See Magallanes v. Bowen, 881 F. 2d 747, 755 (9th Cir. 1989) (stating the court may draw specific and legitimate inferences from the ALJ's decision). On March 3, 2003, Dr. Williams separately assessed Pearsall with only "moderate" limitations in the ability to interact appropriately with the general public, or perform activities within a schedule, etc., and offered no explanation on the "check the box" letter

for concurring with Dr. Trueblood's rating of "marked" impairments in these areas. Tr. 353-57. In light of the Ninth Circuit's disfavor for "fill in the blank documentation" and "check off reports" that lack supporting clinical findings, I find the ALJ properly discredited Dr. Williams' concurrence with Dr. Trueblood's findings. See <u>Young v. Heckler,</u> 803 F.2d 963 (9th Cir. 1986); <u>Crane v. Shalala</u>, 76 F.3d 251 (9th Cir. 1996).

**RECOMMENDATION**

Based on the foregoing, the Commissioner's final decision should be AFFIRMED, and judgment entered dismissing this case.

***<u>This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals</u>***. **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** ***<u>The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections</u>***. **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this 14th day of February, 2005.

\_\_\_\_/s/_____
John P. Cooney
United States Magistrate Judge